ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

JAN - 8 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

ANSEL JOHNSON,
 a/k/a "All-Star";
ANTONIO HAMPTON,
 a/k/a "5ike";
CHACE JONES,
 a/k/a "Tank";
EMMANUEL WULAH,
 a/k/a "Draxo";
JAYDEN WILLIAMS,
 a/k/a "Worstway"

Criminal Indictment

No. **1:25-CR-011**

**UNDER SEAL**

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment:

## GENERAL ALLEGATIONS

1.     "The Bloods" is a street gang spread across the United States. The Bloods are broken into individual units known as "sets." These sets utilize common tattoos, communication codes, language, and graffiti markings and are identified by wearing the color red. Additionally, the Bloods maintain a long-term and often lethal rivalry with the Crips gang, whose signature color is blue. In 1993, the "United Blood Nation," or "UBN," was created as an umbrella organization for

numerous Blood sets. One of the original sets that unified under the UBN was the "Nine Trey Gangsters" (NTG).

2. NTG members are located throughout the eastern United States, including in the Northern District of Georgia. Ultimate authority for gang decisions rests with NTG national leaders in New York and the New York prison system, described by NTG members as "up top."

3. The structure of NTG is hierarchical in nature. NTG is subdivided into separate groups or "lines." Each NTG member has a specific rank within the gang or a specific line, and this rank comes with specific duties and responsibilities. The rank structure NTG uses is often called a "Line Up."

4. Each rank is responsible for specific tasks within the gang. Leadership ranks within NTG and the responsibility of each rank include the following:

    a. Godfather – National leadership over all NTG lines, with additional authority over all United Blood Nation lines as a member of the UBN national council;

    b. High O20 – Regional/state level leader with national authority over a specific NTG line in a specific region or state;

    c. Low O20 – Regional/state level leader who passes information from lower-ranked leaders up the chain of command, and from higher-ranked leaders down the chain of command;

      d.    5th Floor or 5 Star General – Responsible for overseeing the ranked leaders below him and providing those leaders with guidance, in addition to being responsible for the operation of the NTG membership of lesser rank;

      e.    4th Floor or 4 Star General – Aids and assists the 5th Floor in overseeing the lower-ranked leaders and the overall NTG membership below him;

      f.    3rd Floor or 3 Star General – Responsible for planning the "wars" or conflicts with other gangs or rivals, and providing weapons to NTG members to use;

      g.    2nd Floor or 2 Star General – Functions as the treasurer for his particular line and collects dues from NTG members. The 2nd Floor is also responsible for overseeing gang meetings, which are otherwise known as "nines;"

      h.    1st Floor or 1 Star General – Oversees the NTG members without rank, otherwise known as soldiers or scraps, and is in charge of ensuring the soldiers and others below him understand gang knowledge and history;

      i.    Green Light – Reports to the 1st floor and oversees a neighborhood or smaller area on the street or a pod or yard behind the wall;

      j.    Scrap or Soldier – members without rank, obligated to follow orders from gang leadership.

5.    NTG is governed by a common set of rules, codes, laws, and oaths (collectively, the "rules"). The rules include, for example:

a. Requiring individual gang members to operate and conduct themselves as defined by the rules;

b. Procedures for infractions or disciplinary actions;

c. Prohibiting by death "snitching," (also known as "stacking") or cooperating with law enforcement.

6. NTG members use the terms "93," "Billy," "Billies," "Billy Bad Ass," "BBA," and "Nine-Trey," among others, as a reference to NTG members.

7. All gang members are required to "put in work," meaning that they must engage in acts of criminal activity such as drug dealing and violence on behalf of the gang, including when ordered to do so by members of gang leadership.

8. NTG gang members can often, but not always, be identified by the wearing of red clothing and paraphernalia.

9. NTG members display distinctive hand signals and other greetings to one another. Additionally, members use coded language in text messages related to gang activities. In written communications with one another, NTG members often replace the letter "c," which is associated with the rival "Crips" gang, with the letter "k," "b," or "x."

10. At all times relevant to this Indictment, NTG members and associates in Georgia and elsewhere engaged in criminal activity, including, but not limited to, any act involving murder, assault, unlawful use and possession of firearms,

obstruction of justice, drug trafficking, and other crimes. NTG members committed acts of violence against fellow members to enforce discipline within the gang. Members committed acts of violence, including assault and attempted murder, and engaged in drug trafficking and other moneymaking criminal conduct on behalf of the gang, to be promoted and maintain standing within the structure of the gang.

11. NTG members regularly have meetings and conduct the business of the gang, including, but not limited to, initiating new members; punishing or otherwise disciplining members and associates for perceived violations of the gang rules; planning acts of violence; reporting on gang business, including the illegal possession and distribution of drugs; and paying gang dues.

## The Enterprise

12.    At all times relevant to this Indictment, the NTG, including its leaders, members, and associates, constituted an enterprise, as defined by Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, that engaged in, and the activities of which affected, interstate and foreign commerce. The NTG enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The NTG enterprise operated in the Northern District of Georgia and elsewhere.

## Purposes of the Enterprise

13.    The purposes of the NTG enterprise included, but were not limited to, the following:

a.    Enriching the leaders, members, and associates of the enterprise through, among other things, drug trafficking.

b.    Promoting and enhancing the enterprise and its members' and associates' activities, including, but not limited to, attempted murder, assault, drug trafficking, and other criminal activities.

c.    Preserving and protecting the power, territory, reputation, respect, operations, and proceeds of the enterprise through the use of threats, intimidation,

and violence, including, but not limited to, attempted murder, assault, obstruction of justice, and other acts of violence.

    d.    Providing assistance to other gang members who committed crimes for and on behalf of the gang.

## Means and Methods of the Enterprise

14.    Among the means and methods by which members and associates of the NTG enterprise conducted and participated in the conduct of the affairs of the enterprise included, but were not limited to, the following:

    a.    Keeping the community, rivals, and victims and witnesses to crime in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and actual violence, including attempted murder, assault and intimidation.

    b.    Hindering, obstructing, and preventing law enforcement officers from identifying, apprehending, and successfully prosecuting and punishing members of the enterprise.

    c.    Providing an infrastructure to promote criminal activities and schemes within the gang by providing resources, contacts, and safe haven to conduct activities because of the inherent trust among gang members.

15.    The NTG enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Section 1959(b)(1)

and 1961(1), namely, acts involving murder in violation of Georgia state law; offenses involving narcotics trafficking in violation of Title 21, United States Code, Sections 841 and 846; and acts indictable under Title 18, United States Code, Section 1512 (relating to tampering with a witness, victim, or an informant).

## The Defendants

16. The defendants, Ansel JOHNSON, also known as "All-Star"; Antonio HAMPTON, also known as "5ike"; Chace JONES, also known as "Tank"; Emmanuel WULAH, also known as "Draxo"; and Jayden WILLIAMS, also known as "Worstway," were members and associates of the NTG enterprise.

## COUNT ONE
**(Conspiracy to Commit Murder in Aid of Racketeering, 18 U.S.C. § 1959(a)(5))**

17. The general allegations contained in paragraphs one through sixteen of this Indictment are realleged and incorporated herein as if fully set forth in this paragraph.

18. On or about August 10, 2020, in the Northern District of Georgia, the defendants, Ansel JOHNSON, also known as "All-Star"; Antonio HAMPTON, also known as "5ike"; Chace JONES, also known as "Tank"; Emmanuel WULAH, also known as "Draxo"; and Jayden WILLIAMS, also known as "Worstway," for the purpose of maintaining and increasing position in NTG, an enterprise engaged in racketeering activity, did knowingly and willfully

conspire to murder A.K., in violation of Official Code of Georgia, Section 16-5-1 (murder) and Section 16-4-8 (conspiracy).

All in violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT TWO
### (Assault with a Dangerous Weapon and in Aid of Racketeering, 18 U.S.C. § 1959(a)(3))

19. The general allegations contained in paragraphs one through sixteen of this Indictment are realleged and incorporated herein as if fully set forth in this paragraph.

20. On or about August 10, 2020, in the Northern District of Georgia, the defendants, Ansel JOHNSON, also known as "All-Star"; Antonio HAMPTON, also known as "5ike"; Chace JONES, also known as "Tank"; Emmanuel WULAH, also known as "Draxo"; and Jayden WILLIAMS, also known as "Worstway," for the purpose of maintaining and increasing position in NTG, an enterprise engaged in racketeering activity, as described above, knowingly and intentionally assaulted A.K. with a dangerous weapon, and aided and abetted the same, in violation of Official Code of Georgia Section 16-5-21(a)(2) (aggravated assault).

All in violation of Title 18, United States Code, Section 1959(a)(3), and Section 2.

## COUNT THREE
### (Attempted Murder in Aid of Racketeering, 18 U.S.C. § 1959(a)(5))

21. The general allegations contained in paragraphs one through sixteen of this Indictment are realleged and incorporated herein as if fully set forth in this paragraph.

22. On or about August 10, 2020, in the Northern District of Georgia, the defendants, Ansel JOHNSON, also known as "All-Star"; Antonio HAMPTON, also known as "5ike"; Chace JONES, also known as "Tank," Emmanuel WULAH, also known as "Draxo," and Jayden WILLIAMS, also known as "Worstway"; for the purpose of maintaining and increasing position in NTG, an enterprise engaged in racketeering activity, as described above, knowingly and unlawfully attempted to murder A.K., and aided and abetted the same, in violation of Official Code of Georgia Section 16-5-1(a) (murder), and Section 16-4-1 (attempt).

All in violation of Title 18, United States Code, Section 1959(a)(5) and Section 2.

## COUNT FOUR
### (Brandishing and Discharge of a Firearm during a Crime of Violence, 18 U.S.C. § 924(c))

21. On or about August 10, 2020, in the Northern District of Georgia, the defendants, ANTONIO HAMPTON also known as "5ike," ANSEL JOHNSON also known as "All-Star"; CHACE JONES, also known as "Tank"; EMMANUEL WULAH, also known as "Draxo"; and JAYDEN WILLIAMS, also known as "Worstway," while aiding and abetting each other, did knowingly use and carry a firearm during and in relation to a crime of violence for which the defendants may be prosecuted in a court of the United States, that is, Assault with a Dangerous Weapon in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a)(3), and Attempted Murder in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a)(5), as alleged in Counts Two and Three of this Indictment, respectively, and during and in relation to the commission of the offense, did brandish and discharge a firearm.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(c)(1)(A)(i)-(iii), and Section 2.

## FORFEITURE PROVISION

Upon conviction of one or more the offenses alleged in Count Four of this Indictment, the defendants, ANSEL JOHNSON also known as "All-Star," ANTONIO HAMPTON also known as "5ike," CHACE JONES also known as "Tank," EMMANUEL WULAH, also known as "Draxo," and JAYDEN WILLIAMS, also known as "Worstway," shall forfeit to the United States pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), any firearms and ammunition involved in or used in the commission of the offenses.

If, as a result of any act or omission of the defendants, any property subject to forfeiture:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be

divided without difficulty; the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code,

Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

A ___True___ BILL

_____
FOREPERSON

RYAN K. BUCHANAN
*United States Attorney*

MATTHEW CARRICO
*Assistant United States Attorney*
Ga. Bar No. 538608

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

13